IN THE UNITED STATES DISTRICT COURT FOR

THE EASTERN DISTRICT OF MICHIGAN

SOUTHERN DIVISION

XUAN LU,
A Michigan Resident,

    Plaintiff,

V                                      Case No. 2021-cv-_____
                                      Hon.

SAP CHINA, a Foreign corporation,
SAP America, a Delaware corporation, and
SAP S.E., a Foreign corporation,

    Defendants.
    Jointly and severally,

LAW OFFICE OF BRYAN MONAGHAN
Bryan Monaghan (P-42461)
Attorneys for Plaintiff
337 South Main Street, Suite 201
Rochester, Michigan  48307
(248) 608-5300 / Fax (248) 651-5531
bryan@bryanmonaghanlaw.com

There is a breach of employment contract claim pending in Beijing, China, Case No. (2021) Jing 0105 Min Chu No. 6467 action arising out of the transaction or occurrence relating to the complaint.

**COMPLAINT AND JURY DEMAND**

NOW COMES PLAINTIFF, Xuan Lu, by her attorney, THE LAW OFFICE OF BRYAN MONAGHAN, and for her complaint against Defendants, states as follows:

**JURISDICTION**

1.    Plaintiff, XUAN LU, is a United States Permanent Resident and resides in Rochester Hills, County of Oakland, State of Michigan.

1

2. SAP China is a Chinese corporation with a principal place of business in China and doing business throughout the United States, including the State of Michigan.

3. SAP S.E. is a German corporation registered with the New York Stock Exchange with a place of business in the City of New York, State of New York and doing business throughout the United States, including the State of Michigan. SAP S.E is mother company of SAP China and SAP America and wholly owns the two subsidiaries in China and USA.

4. SAP America is a Delaware corporation with a principal place of business in the City of Newtown Square, State of Pennsylvania and doing business in the State of Michigan.

5. The acts and/or omissions complained of herein took place in the County of Oakland, State of Michigan.

6. The amount in controversy, exclusive of attorney fees, costs and interest, is in excess of $75,000.00.

7. Jurisdiction and venue are vested and otherwise proper in this Court pursuant to the Americans with Disabilities Act, 42 USC §12112 et seq. ("ADA") and the Civil Rights Act of 1964, 42 U.S.C. §2000e, et seq.

**GENERAL ALLEGATIONS**

8. Plaintiff repeats the allegations contained in paragraphs 1-7 and incorporates same herein by reference.

9. Defendant SAP China is a Chinese corporation engaged in the business of enterprise application software.

10. Many SAP China's Chinese customers have entities and operations in the US including Huawai Technologies U.S., located in Plano, Texas; Lenovo U.S. Inc., located in Morrisville, North Carolina; Sinopec USA, Inc., located in Houston, Texas.

11. Defendant SAP S.E. is a German corporation engaged in the business of enterprise application software.

12. SAP America is a Delaware corporation engaged in the business of enterprise application software.

13. Defendants SAP China, SAP S.E. and SAP America are Plaintiff's joint employers.

14. Plaintiff was hired by the Defendants on or about March 2, 2015, as a Global Legal Compliance Officer. Plaintiff was offered a permanent job and no-fixed term employment contract. According to China labor contract laws and Plaintiff's employment contract, Defendants can't freely fire Plaintiff without good causes, and Defendants shall fulfill procedural requirements of China labor laws for termination including providing Plaintiff with exact and unambiguous reasons even though Defendants have good causes to terminate Plaintiff's employment contract. Otherwise, Defendants' termination not complying with China labor substantive and procedural laws will be an unlawful termination.

15. Plaintiff is a person with a disability under the ADA with a diagnosis of lupus with ongoing symptoms that include insomnia and severe fatigue.

16. From the date of her hire to on or about May 2018, Plaintiff's direct supervisor was first Vivianne Gordon-Puller and then Hanno Hinzmann.

17. While supervised by Hanno Hinzmann and Vivianne Gordon-Puller, Plaintiff was consistently rated as an outstanding employee and annually received bonuses of between 104% and 110% of her base pay.

18. On or about May 2018, Plaintiff was assigned a new supervisor, Azmeen Moiz, who is Indian and who was based in Singapore.

19. On or about August 2018, Plaintiff with Defendants approval began working six months of the year in the State of Michigan.

20. While in the State of Michigan, Plaintiff's supervisor Azmeen Moiz routinely scheduled Skype meetings, which she required Plaintiff to attend, for midnight or two a.m. or three a.m. EST.

21. Due to her lupus, insomnia and fatigue, which made attending these extremely late-night meetings extremely difficult and debilitating, Plaintiff requested an accommodation from her supervisor, specifically either that the Skype meetings be scheduled at a different time or that Plaintiff be permitted to view a recording of these meetings at a later time.

22. Plaintiff's supervisor, Azmeen Moiz, rejected Plaintiff's accommodation requests, and insisted that the meeting times remain as scheduled, telling Plaintiff that she preferred to favor her Indian employees as to meeting times.

23. Thereafter, Plaintiff's supervisor, Azmeen Moiz, consistently and regularly retaliated and/or discriminated against Plaintiff, including treating Plaintiff less favorably than Plaintiff's Indian co-workers including not supporting Plaintiff to take vacation time at the end of the quarter, and/or failing to respond and/or ignoring Plaintiff's leave requests, not assigning business travel which was assigned to Plaintiff's co-workers, and paying Plaintiff a smaller annual bonus than Plaintiff's Indian co-workers, yelling at Plaintiff, actively seeking negative feedback regarding Plaintiff from Plaintiff's co-workers, falsely accusing Plaintiff of work errors, failing to utilize proper protocols for employee coaching and/or supervision.

24. On or about April 5, 2019, Plaintiff complained of Azmeen Moiz' discriminatory conduct to Azmeen Moiz' supervisor, Hanno Hinzmann. However, Mr. Hinzmann ignored Plaintiff's complaint and no remedial action was taken.

25. On or about September 25, 2019, Plaintiff's supervisor, Azmeen Moiz retaliated and/or discriminated against Plaintiff by placing Plaintiff on a Performance Improvement Plan ("PIP") that included patently false accusations of poor work performance. The time duration of the PIP was 90 days, ending on December 25, 2019.

26. On or about September 26, 2019, Plaintiff complained of Azmeen Moiz' discriminatory conduct to Hanno Hinzmann's supervisor, Vivianne Gordon-Puller. Ms. Gordon-Puller did not take any remedial action but instead told Plaintiff to cooperate with the PIP.

27. On or about October 4, 2019, Plaintiff complained about Ms. Moiz' retaliatory and discriminatory conduct to Stacey Caplan, Defendants' Global Human Resources Compliance Manager, including that Ms. Moiz was treating her differently than co-workers, ignoring her requests for sick leaves or other time off, reducing her annual bonus and placing her on an unfair and patently false PIP.

28. On or about October 8, 2019, Ms. Caplan responded to Plaintiff and asked that Plaintiff not mention her complaint to anyone outside SAP Human Resources.

29. Thereafter, on October 30, 2019 and November 5, 2019, Plaintiff referenced her Human Resources complaint, and her supervisor's retaliatory conduct to support Plaintiff's request for changing PIP reviewer (her supervisor who had discrimination and retaliation on her), in two separate emails to Plaintiff's supervisors and Human Resources.

30. On or about November 13 and November 14, 2019, Plaintiff was notified that she was required to attend an in-person meeting in China on Nov. 18, 2019 to review the PIP Ms. Moiz had wrongfully submitted against her.

31. On November 14 and 15, 2019, Plaintiff repeatedly requested sick leave time, even to global Human Resources Head (SAP Group global Board member), and made a further complaint to Global Human Resources Head about Ms. Moiz' wrongful conducts and Human Resources' ignoring her sickness and threat that Plaintiff would be fired if she failed to attend the in-person PIP meeting of Nov. 18, 2019.

32. Defendants denied Plaintiff's sick leave request in part because Plaintiff's US doctor was not in China. Thereafter, Plaintiff was forced to go to China and upon arrival obtained a sick leave note from a Chinese Emergency Room doctor but Defendants still declined to give her leave time.

33. On or about November 18, 2019, Plaintiff appeared as requested for her PIP meeting, despite being sick and having asked for leave, and was notified that there was to be no PIP review and Plaintiff was thereafter summarily terminated. Plaintiff was given a written termination letter simply stating she was being terminated because of violations of company policies, but in the termination letter Defendants did not state what exact violations that Plaintiff had and what exact company rules that Plaintiff violated as required by China labor contract laws. Under China labor contract laws, when employers unilaterally terminate labor contracts with employees, they must have good and solid cause and follow a certain legal procedure including employer's obligation to give out exact reasons and violations in the written termination letter when they fire employees by the reason of employees have severe violations of company rules. Defendants are quite knowledgeable about the legal requirements of China labor contract laws, but why Defendants opted not to comply with China laws was because Defendants did not have exact good reasons to fire Plaintiff at all. Defendants were unable to put their real reasons (discriminations) and motives (retaliations) into the termination letter. Defendants showed a severe disrespect and big defiance to China labor laws, which is discrimination against Plaintiff/Chinese itself.

34. On April 30, 2020, Plaintiff filed a Charge of Discrimination with the Equal Employment Opportunity Commission ("EEOC") (Charge attached as Exhibit 1).

35. On January 12, 2021, the EEOC issued to Plaintiff a Right To Sue Letter which was received on January 19, 2021 (Right to Sue Letter attached as Exhibit 2).

## COUNT I
## DISABILITY DISCRIMINATION/FAILURE TO ACCOMMODATE
## (ADA)

36. Plaintiff repeats the allegations contained in paragraphs 1 through 35 and incorporates same herein by reference.

6

37. Plaintiff is a disabled person as defined under the ADA who was qualified to do her job with a reasonable accommodation.

38. Plaintiff was entitled to an accommodation and requested same from Defendants.

39. Defendants denied Plaintiff's an accommodation in violation of the ADA.

40. Defendants refused to engage in any interactive process with Plaintiff regarding either her disability or her accommodation, in violation of the ADA.

41. Defendants acted with malice or reckless indifference as to Plaintiff's right to accommodation, including repeated sick leave requests, or her right to engage in an interactive process regarding an accommodation, in violation of the ADA.

42. Defendants thereafter discriminated against Plaintiff because of her disability in violation of her rights under the ADA, including treating Plaintiff less favorably than her similarly situated non-disabled co-workers.

43. Defendants thereafter retaliated against Plaintiff based on her disability and her request for accommodation, and her complaint regarding Defendants' failure to provide her an accommodation, in violation of the ADA including treating Plaintiff less favorably than her similarly situated non-disabled co-workers and discharging Plaintiff with a wrongful termination excuse to hide Defendants' real reasons of disability discrimination and retaliation.

44. As a direct and proximate result of Defendants violations of the ADA, Plaintiff has suffered damages.

WHEREFORE, Plaintiff requests that this Court grant Judgment in her favor as against the Defendant and award to her all damages to which she is entitled under the ADA, in an amount in excess of $75,000.00, as well as costs, interest and attorney fees.

## COUNT II
## DISABILITY DISCRIMINATION
## FAILURE TO ACCOMMODATE
## (MPWDCRA)

45. Plaintiff repeats the allegations contained in paragraphs 1 through 44 and incorporates same herein by reference.

46. Plaintiff was a person with disabilities under Michigan's Persons with Disabilities Act, MCL 37. 1101, et seq ("MPWDCRA").

47. Plaintiff was entitled to obtain accommodation to her disability under the MPWDCRA.

48. Defendants denied Plaintiff an accommodation in violation of the MPWDCRA.

49. Defendants discriminated against Plaintiff because of her disability, in violation of the MPWDCRA, including treating Plaintiff less favorably than her similarly situated non-disabled co-workers.

50. Defendants retaliated against Plaintiff based on her disability and her request for accommodation and her complaints regarding Defendants' failure to provide her an accommodation, including treating Plaintiff less favorably than similarly situated non-disabled employees and discharging Plaintiff with a wrongful termination excuse to hide Defendants' real termination reasons (disability discrimination and retaliations).

51. As a direct, causal and proximate result of Defendants violations of the MPWDCRA Plaintiff has suffered damages.

WHEREFORE, Plaintiff requests that this Court grant Judgment in her favor as against the Defendant and award to her all damages to which she is entitled under the MPWDCRA, in an amount in excess of $75,000.00, as well as costs, interest and attorney fees.

## COUNT III
## NATIONAL ORIGIN/RACE DISCRIMINATION
## (42 USC §2000e)

52. Plaintiff repeats the allegations contained in paragraph 1 through 51 and incorporates same herein by reference.

53. Plaintiff is a Chinese citizen and United States Permanent Resident residing in the United States.

54. Plaintiff's supervisor and Defendants' agents while employed by Defendants after May 2018 was a person of Indian heritage working and residing in Singapore.

55. Plaintiff's supervisor discriminated against Plaintiff because of her Chinese heritage including treating Plaintiff differently than her similarly situated non-Chinese co-employees.

56. Plaintiff's supervisor discriminated against Plaintiff and expressed a preference for the Plaintiff's similarly situated non-Chinese co-employees.

57. The conduct of Defendants agents was in violation of the Civil Rights Act of 1964, 42 USC §2000e et seq ("CRA").

58. As a direct and proximate result of Defendants violations of the ADA, Plaintiff has suffered damages.

WHEREFORE, Plaintiff requests that this Court grant Judgment in her favor as against the Defendant and award to her all damages to which she is entitled under 42 USC §2000e et seq, in an amount in excess of $75,000.00, as well as costs, interest and attorney fees.

## COUNT IV
## NATIONAL ORIGIN/RACE DISCRIMINATION
## (ELCRA)

59. Plaintiff repeats the allegations contained in paragraph 1 through 58 and incorporates same herein by reference.

60. Plaintiff is a Chinese citizen and United States Permanent Resident residing in the United States.

61. Plaintiff's supervisor and Defendants' agents while employed by Defendants after May 2018 was a person of Indian heritage working and residing in Singapore.

62. Plaintiff's supervisor discriminated against Plaintiff because of her Chinese heritage including treating Plaintiff differently than her similarly situated non-Chinese co-employees.

63. Plaintiff's supervisor discriminated against Plaintiff and expressed a preference for the Plaintiff's similarly situated non-Chinese co-employees.

64. The conduct of Defendants agents was in violation of Michigan Elliott-Larson Civil Rights Act, MCL 37.2101 et seq ("ELCRA").

65. As a direct and proximate result of Defendants violations of the ELCRA, Plaintiff has suffered damages.

WHEREFORE, Plaintiff requests that this Court grant Judgment in her favor as against the Defendant and award to her all damages to which she is entitled under MCL 37.2101 et seq, in an amount in excess of $75,000.00, as well as costs, interest and attorney fees.

## COUNT V
## RETALIATION
## (ADA)

66. Plaintiff repeats the allegations contained in paragraph 1 through 65 and incorporates same herein by reference.

67. Plaintiff made complaints to Defendant regarding Defendants' failure to accommodate her.

68. Plaintiff's complaints were ignored and no remedial action was taken.

69. Defendants retaliated against Plaintiff for activity protected under the ADA, including asking for an accommodation and complaining about being denied same, including treating Plaintiff less

favorably than similarly situated non-disabled employees and discharging Plaintiff with a wrongful termination excuse to hide Defendants' real termination reasons (discriminations and retaliations).

70. As a direct and proximate result of Defendants violations of the ADA, Plaintiff has suffered damages.

WHEREFORE, Plaintiff requests that this Court grant Judgment in her favor as against the Defendant and award to her all damages to which she is entitled under the ADA, in an amount in excess of $75,000.00, as well as costs, interest and attorney fees.

### COUNT VI
### RETALIATION
### (MPWDCRA)

71. Plaintiff repeats the allegations contained in paragraph 1 through 70 and incorporates same herein by reference.

72. Plaintiff made complaints to Defendants regarding Defendants failure to accommodate her.

73. Plaintiff's complaints were ignored and no remedial action was taken.

74. Defendants retaliated against Plaintiff for activity protected under the MPWDCRA, including asking for an accommodation and complaining about being denied same, by treating Plaintiff differently than similarly situated non-disabled employees and discharging Plaintiff with a wrongful termination excuse to hide Defendants' real termination reasons (discriminations and retaliations).

75. As a direct and proximate result of Defendants violations of the MPWDCRA, Plaintiff has suffered damages.

WHEREFORE, Plaintiff requests that this Court grant Judgment in her favor as against the Defendant and award to her all damages to which she is entitled under the MPWDCRA, in an amount in excess of $75,000.00, as well as costs, interest and attorney fees.

## COUNT VII
## INTENTIONAL INFLICTION OF EMOTIONAL DISTRESS

76. Plaintiff repeats the allegations contained in paragraph 1 through 75 and incorporates same herein by reference.

77. Defendants, by their acts and/or omissions, including those referenced herein and having Plaintiff travel to China under false pretenses so that Plaintiff would be physically present in China when she was terminated, intended to cause Plaintiff to suffer severe emotional distress. Defendants' agents further executed retaliations on Plaintiff by taking false pretense means and aggravated Plaintiff's illness.

78. Defendants' acts and/or omissions were and are outrageous and utterly intolerable in a civilized society.

79. As a direct and proximate result of Defendants conduct, Plaintiff in fact has suffered severe emotional distress.

WHEREFORE, Plaintiff respects that this Court grant Judgment as to Plaintiff against the Defendants, jointly and severally and award Plaintiff all damages to which she is entitled.

## CONCLUSION

WHEREFORE, Plaintiff respectfully request that this Court grant Judgment to Plaintiff as against the Defendants, jointly and severally and award Plaintiff all damages to which she is entitled.

Respectfully submitted,

THE LAW OFFICE OF BRYAN MONAGHAN

Dated: April 9, 2021     By:    /s/ Bryan Monaghan
             337 South Main Street, Suite 201
             Rochester, Michigan  48307
             (248) 608-5300
             bryan@bryanmonaghanlaw.com
             P-42461

## JURY DEMAND

NOW COMES the Plaintiff, XUAN LU, by her attorneys, THE LAW OFFICE OF BRYAN MONAGHAN, and hereby demands trial by jury in this matter.

                                          Respectfully submitted,

                                          THE LAW OFFICE OF BRYAN MONAGHAN

Dated: April 9, 2021                By:    /s/ Bryan Monaghan
                                                  337 South Main Street, Suite 201
                                                  Rochester, Michigan  48307
                                                  (248) 608-5300
                                                  bryan@bryanmonaghanlaw.com
                                                  P-42461