UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

Xuan Lu,

       Plaintiff,

                                    Civil Case No. 21-10796

v.

SAP America, *et al.*,               Sean F. Cox
                                 United States District Court Judge

       Defendants.

_____/

**OPINION AND ORDER**
**GRANTING SAP AMERICA'S MOTION TO SET ASIDE DEFAULT AND**
**GRANTING SAP AMERICA'S MOTION TO DISMISS**

This is an employment discrimination case. Plaintiff, Xuan Lu ("Lu") alleges that Defendants, including SAP America, Inc. ("SAP America"), discriminated against her based upon her disability and national origin. The matters currently before the Court are SAP America's Motion to Set Aside Default (ECF No. 12) and SAP America's Motion to Dismiss (ECF No. 18). The parties have briefed the issues and the Court concludes that oral argument is not necessary. Thus, the Court orders that the motion will be decided without a hearing. *See* E.D. Mich. LR 7.1(f).

This Opinion and Order is divided into two sections for each of the motions. For the reasons explained below, the Court:

(1) **GRANTS** SAP America's motion to set aside default (ECF No. 12) and **DISMISSES** the clerk's entry of default against SAP America (ECF No. 8) because Lu failed to properly serve SAP America; and

(2) **GRANTS** SAP America's motion to dismiss (ECF No. 18) and **DISMISSES** the entirety of this action on the basis of forum non conveniens.

1

## I. MOTION TO SET ASIDE DEFAULT (ECF No. 12)

### BACKGROUND

On April 9, 2021, Lu initiated this action by filing her Complaint with this Court. (ECF No. 1). Defendants in this case are SAP America, SAP China, and SAP S.E. The only Defendant involved in the current motions is SAP America.

On July 6, 2021, Lu sent a copy of the Summons and Complaint via overnight mail to the registered agent of SAP America, the Corporation Company, with a signature required. (ECF No. 6, at PageID 28). The tracking information provided to Lu by the United States Postal Service ("USPS") shows that it was delivered on July 7, 2021. (ECF No. 6-3, at PageID 35). On July 6, 2021, Lu also sent copies of the Summons and Complaint to the Corporation Company via certified mail, return receipt requested. (ECF No. 6-4). The USPS tracking information shows that it was delivered on July 9, 2021. (ECF No. 6-5).

On July 7, 2021, the Corporation Company forwarded the Summons and Complaint via email to SAP America. (ECF No 12-2, at PageID 77). On July 8, 2021, the paralegal at SAP America who received the email from the Corporation Company forwarded it to SAP America's in-house counsel, Isabelle Laprade-Finberg ("Laprade-Finberg"). (ECF No. 12-2, at PageID 77). Laprade-Finberg testified that she "inadvertently overlooked this email as I was traveling internationally the same day (on my first scheduled vacation since COVID) and was also attending to ongoing COVID-related work responsibilities while traveling." (ECF No. 12-2, at PageID 77).

On July 8, 2021, the Court ordered Lu to show cause why the case should not be dismissed for failure to prosecute, pursuant to E.D. Mich. LR 41.2. (ECF No. 5). In response, Lu provided tracking information regarding the mailing of the Summons and Complaint to SAP America and

requested an Order extending the Summons on SAP China and SAP S.E. for one year to allow for service under the protocols of the Hague Convention. (ECF No. 6).

On August 17, 2021, Lu filed a Request for Clerk's Entry of Default as to SAP America. (ECF No. 7). On August 19, 2021, the Court entered Clerk's Entry of Default against SAP America. (ECF No. 8).

On August 23, 2021, the Court issued an Order Extending Summons for One Year as to SAP China and SAP S.E. (ECF No. 9).

On December 21, 2021, Lu mailed the Clerk's Entry of Default to the Corporation Company, via U.S. mail. (ECF No. 10). On December 28, 2021, Laprade-Finberg received the Clerk's Entry of Default. (ECF No. 12-2, at PageID 78).

SAP America is currently represented by Brian L. Johnsrud ("Johnsrud"), a partner at the law firm Curley, Hurtgen & Johnsrud LLP. (ECF No. 12-3). Johnsrud testified that Lu has known for several months that SAP America was represented by Curley, Hurtgen & Johnsrud LLP in connection with the Charge of Discrimination Lu filed with the Equal Employment Opportunity Commission ("EEOC") in this matter. (ECF No. 12-8, at PageID 108).

On December 30, 2021, Johnsrud emailed Lu's counsel, Bryan Monaghan ("Monaghan") to explain the situation and requested that SAP America stipulate to vacating the Clerk's Entry of Default and provide SAP America with 45 days to respond to the Complaint. (ECF No. 12-3, at PageID 109). On January 3, 2022, Monaghan responded that it would not stipulate to set aside the default. (ECF No. 12-3, at PageID 168).

SAP America retained local counsel, Brian Schwartz of Miller, Canfield, Paddock and Stone, P.L.C. ("Schwartz") to represent it in this matter. On January 5, 2022, Schwartz filed the present motion, SAP America's Motion to Set Aside Default (ECF No. 12).

## ANALYSIS

Under Federal Rule of Civil Procedure 55(b), a judgment by default may be entered against a defendant who has failed to plead or otherwise defend against an action. In order to obtain judgment by default, the proponent must first request the clerk's entry of default pursuant to Rule 55(a). *Etherly v. Rehabitat Systems of Michigan*, No. 13-11360, 2013 WL 3946079 at *3 (E.D. Mich. July 31, 2013). Lu made such a request from the Clerk's Office because SAP America had failed to plead or otherwise defend against this action (ECF No. 7), and the Court entered the Clerk's Entry of Default against SAP America (ECF No. 8). However, "because a party has no duty to plead until properly served, sufficient service of process is a prerequisite to entry of default." *Id*. at *3. Therefore, the Court must determine if SAP America was properly served.

Here, SAP America argues that Lu failed to properly serve it by only mailing the Summons and Complaint. (ECF No. 12, at PageID 61).

Federal Rule of Civil Procedure 4(h) requires that corporations in a judicial district of the United States must be served:

(A) in the manner prescribed by Rule 4(e)(1) for serving an individual; or

(B) **by delivering a copy** of the summons and the complaint to an officer, managing or general agent, or any other agent authorized by appointment or by law to receive service of process **and** – if the agent is one authorized by statute and the statute so requires – **by also mailing a copy** of each to the defendant[.]

FED. R. CIV. P. 4(h)(1) (emphasis added). As there is no evidence that Lu personally delivered a copy of the Summons and Complaint, Rule 4(h)((1)(B) does not help her. Thus, the Court must

4

look to Rule 4(e)(1). Under Rule 4(e)(1), an individual may be served in a judicial district of the

United States by:

> (1) **following state law** for serving a summons in an action brought in courts of general jurisdiction in the state where the district court is located or where service is made; or

FED. R. CIV. P. 4(e)(1) (emphasis added).

Here, the relevant state law under Rule 4(e)(1) is the Michigan Court Rules. Under

Michigan Court Rule 2.105(d) a private corporation – such as SAP America – must be served by

one of the following methods:

> (1) **serving a summons** and a copy of the complaint on an officer or the resident agent;
>
> (2) **serving a summons** and a copy of the complaint on a director, trustee, or person in charge of an office or business establishment of the corporation **and sending a summons** and a copy of the complaint by registered mail, addressed to the principal office of the corporation[.]
> . . .

MCR 2.105(D)(1)-(2) (emphasis added).

The Michigan Court Rules also require personal service to properly serve a corporation.

Based upon the deliberate distinction between "serving" and "sending . . . by registered mail," "the

Michigan Supreme Court did not intend that the term 'serving' be interpreted as synonymous with

'mailing.'" *State Farm Fire and Cas. Co. v. Hamilton Beach/Proctor-Silex, Inc.*, No. 05-74700,

2007 WL 127909, at *4 (E.D. Mich. 2007); *see also Etherly*, 2013 WL 3946079 at *5 ("Together,

the Rules make plain that "serving" is separate and distinct from "sending" by mail."). As

explained by the Michigan Court of Appeals, the Michigan Court Rules "require personal service

on an officer, registered agent, director, trustee, or person in charge of an office or business

establishment[,]" and they "simply do not contemplate that a plaintiff may use certified mail as an

initial form of service on corporate entities of any kind." *Bullington v. Corbell*, 293 Mich. App. 549, 663 (2011).

Thus, as a matter of law, Lu insufficiently served SAP America by failing to personally serve SAP America and only sending the Summons and Complaint via overnight and certified mail. *See Etherly*, 2013 WL 3946079 at *5-6 (denying plaintiff's motion for default judgment and holding that neither Rule 4(h)(1) nor the Michigan Court Rules authorized service of process by mail alone on a corporate defendant); s*ee also Hamilton Beach/Proctor-Silex, Inc.*, 2007 WL 127909, at *3-4.

"[T]here must be effective service of process on a defendant before an entry of default can be made. Without proper service of process, the district court is without jurisdiction to make an entry of default against a defendant . . ." *Sandoval v. Bluegrass Regional Mental Health-Mental Retardation Board*, 229 F.3d 1153, 2000 WL 1257040, at *5 (6th Cir. 2002) (unpublished table decision) (citing 10A Wright, Miller & Kane, *Federal Practice and Procedure: Civil 3d* § 2682).

As Lu failed to properly serve SAP America under either the Federal Rules of Civil Procedure or the Michigan Court Rules, SAP America was not required to answer the Complaint and cannot be found in default for failing to timely do so.

Therefore, the Court **GRANTS** SAP America's motion to set aside default (ECF No. 12) and **DISMISSES** the clerk's entry of default against SAP America (ECF No. 8).

6

## II. MOTION TO DISMISS (ECF No. 18)

### BACKGROUND

In Lu's Complaint, she alleges: (1) Disability Discrimination/Failure to Accommodate in violation of the Americans with Disabilities Act, 42 USC §12112, *et seq.* ("ADA") (Count I); (2) Disability Discrimination Failure to Accommodate in violation of the Michigan Persons with Disabilities Civil Rights Act, MCL 1101, *et seq.* ("MPWDCRA") (Count II); (3) National Origin/Race Discrimination in violation of the Civil Rights Act of 1964, 42 USC § 2000e, *et seq.* ("CRA") (Count III); (4) National Origin/Race Discrimination in violation of the Michigan Elliott-Larson Civil Rights Act, MCL 37.2101, et seq. ("ELCRA") (Count IV); (5) Retaliation in violation of the ADA (Count V); (6) Retaliation in violation of the MPWDCRA (Count VI); and (7) Intentional Infliction of Emotional Distress (Count VII). (ECF No. 1).

Because this matter comes before the Court on a motion to dismiss the Complaint, the following allegations in Lu's Complaint (ECF No. 1) are taken as true. *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009).

Lu states that SAP China, SAP S.E., and SAP are her "joint employers." (ECF No. 1, at PageID 3). On March 2, 2015, Lu was hired as a Global Legal Compliance Officer and was "offered a permanent job and no-fixed term employment contract." (ECF No. 1, at PageID 3). The parties to the Employment Contract were SAP (Beijing) Software System Co., Ltd. and Lu. (ECF No. 18-4, at PageID 394). The Employment Contract lists Lu's place of residence and current work location as Beijing, China. (ECF No. 18-4, at PageID 394).

Lu has been diagnosed with "lupus with ongoing symptoms that include insomnia and severe fatigue." (ECF No. 1, at PageID 3).

On May 2018, Lu was assigned a new supervisor, Azmeen Moiz ("Moiz"), who is Indian and was based in Singapore. (ECF No. 1, at PageID 3).

In August 2018, Lu began working six months of the year in the State of Michigan with Defendants approval. (ECF No. 1, at PageID 3). While Lu was working in Michigan, Moiz routinely scheduled Skype meetings between midnight and three a.m., Eastern Standard Time, and Moiz required Lu to attend these meetings. (ECF No. 1, at PageID 4). Lu requested an accommodation from Moiz because her lupus, insomnia, and fatigue made attending these late-night meetings "extremely difficult and debilitating." (ECF No. 1, at PageID 4). Specifically, Lu requested that either the Skype meetings be scheduled at a different time or that Lu be permitted to view a recording of these meetings at a later time. (ECF No. 1, at PageId 4). Moiz rejected these accommodation requests, and "insisted that the meeting times remain as scheduled, telling Plaintiff that she preferred to favor her Indian employees as to meeting times." (ECF No. 1, at PageID 4).

After rejecting Lu's request, Moiz:

> consistently and regularly retaliated and/or discriminated against Plaintiff, including treating Plaintiff less favorably than Plaintiff's Indian co-workers including not supporting Plaintiff to take vacation time at the end of the quarter, and/or failing to respond and/or ignoring Plaintiff's leave requests, not assigning business travel which was assigned to Plaintiff's co-workers, and paying Plaintiff a smaller annual bonus than Plaintiff's Indian co-workers, yelling at Plaintiff, actively seeking negative feedback regarding Plaintiff from Plaintiff's co-workers, falsely accusing Plaintiff of work errors, failing to utilize proper protocols for employee coaching and/or supervision.

(ECF No. 1, at PageID 4). On April 5, 2019, Lu complained of this conduct to Moiz's supervisor, Hanno Hinzmann ("Hinzmann"), but he ignored Lu's complaint. (ECF No. 1, at PageID 4).

8

On September 25, 2019, Moiz placed Lu on a Performance Improvement Plan ("PIP") that included false accusations of poor work performance. (ECF No. 1, at PageID 4). The PIP was to last 90 days, ending on December 25, 2019. (ECF No. 1, at PageID 4).

The next day, on September 26, 2019, Lu complained to Hinzmann's supervisor, Vivianne Gordon-Puller ("Gordon-Puller"). (ECF No. 1, at PageID 5). Gordon-Puller responded to the complaint by telling Lu to cooperate with the PIP. (ECF No. 1, at PageID 5). On October 4, 2019, Lu complained about Moiz's conduct to Stacey Caplan ("Caplan"), Defendants' Global Human Resources Compliance Manager. (ECF No. 1, at PageID 5). On October 8, 2019, Caplan responded to Lu by asking that Lu not mention her complaint to anyone outside SAP Human Resources. (ECF No. 1, at PageID 5).

On October 30, 2019 and November 5, 2019, Lu requested to change her PIP reviewer from Moiz to another individual. (ECF No. 1, at PageID 5). Lu sent two separate emails to her supervisors and Human Resources, using her Human Resources complaint and Moiz's conduct to support this request. (ECF No. 1, at PageID 5).

On November 13 and 14, 2019, Lu was notified that she was required to attend an in-person meeting in China on November 18, 2019 to review the PIP.  (ECF No. 1, at PageID 5).

On November 14 and 15, 2019, Lu repeatedly requested sick leave time. (ECF No. 1, at PageID 5). This included requesting sick leave time from Global Human Resources Head[1] and complaining to this person about Moiz's conduct and Human Resources responses. (ECF No. 1, at PageID 5).

---

[1] The Complaint does not identify this person further.

Defendants denied Lu's sick leave request in part because Lu's "US doctor was not in China." (ECF No. 1, at PageID 5). Lu went to China and received a sick leave note from a Chinese Emergency Room doctor. (ECF No. 1, at PageID 5). However, even with the Chinese doctor's sick leave note, Defendants declined to give Lu leave time. (ECF No. 1, at PageID 5).

On November 18, 2019, Lu appeared as requested for her PIP meeting. (ECF No. 1, at PageID 6). At the meeting, Lu was informed that "there was to be no PIP review and Plaintiff was thereafter summarily terminated." (ECF No. 1, at PageID 6). Lu was given a written termination letter, which stated she was terminated due to violations in company policies, although the specific policies were not identified. (ECF No. 1, at PageID 6).

On January 22, 2020, Lu filed a complaint against SAP China to the Labor Arbitration Committee of Chaoyang District, Beijing seeking (1) reinstatement of her job; (2) a compensatory payment for lost salary; (3) her Y2019 annual target bonus and the difference for her Y2018 annual target bonus; and (4) payment of the "Move SAP" which relates to equity granted by SAP SE (Germany). (ECF No. 18-4, at PageID 416). A hearing was held and in August 2020, the Labor Arbitration Committee awarded Lu reinstatement and her lost salary and Y2019 bonus, but rejected her other claims. (ECF No. 18-4, at PageID 420). Both SAP China and Lu disagreed with this award and filed first-instance lawsuits in the People's Court of Chaoyang District, Beijing. (ECF No. 18-4, at PageID 416). On October 15, 2021, a court hearing was held, but as of the time that SAP America filed the present motion, the Court had not yet issued a verdict. (ECF No. 18, at PageID 320).

On April 30, 2020, Lu filed a Charge of Discrimination with the Equal Employment Opportunity Commission ("EEOC"). (ECF No. 2-1). On January 12, 2021, the EEOC issued Lu a

Right to Sue Letter. (ECF No. 2-2). The EEOC Right to Sue Letter stated that the reason the EEOC closed Lu's file was because there was "no employer-employee relationship." (ECF No. 2-2, at PageID 19).

## STANDARD OF REVIEW

A motion to dismiss tests the legal sufficiency of the plaintiff's complaint. To survive a motion to dismiss, the complaint must state sufficient "facts to state a claim to relief that is plausible on its face." *Bell Atlantic Corp. v. Twombly,* 550 U.S. 544, 570 (2007). Claims comprised of "labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." *Id.* at 555. "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal,* 556 U.S. 662 (2009).

Although the Court must accept all well-pleaded factual allegations as true for purposes of a motion to dismiss, the Court is "not bound to accept as true a legal conclusion couched as a factual allegation." *Twombly*, 550 U.S. at 555. Thus, to avoid dismissal, "a complaint must contain sufficient factual matter," accepted as true, to state a claim for relief that is plausible on its face. *Id.* at 678. In practice, a complaint must contain either direct or inferential allegations respecting all the material elements to sustain recovery under some viable legal theory. *Lillard v. Shelby County Bd. of Educ.*, 76 F.3d 716, 726 (6th Cir. 1996).

"When a court is presented with a Rule 12(b)(6) motion, it may consider the Complaint and any exhibits attached thereto, public records, items appearing in the record of the case and exhibits attached to defendant's motion to dismiss so long as they are referred to in the Complaint

and are central to the claims contained therein." *Weiner v. Klais & Co.*, 108 F.3d 86, 89 (6th Cir. 1997).

## ANALYSIS

SAP America makes several arguments that Lu's Complaint should be dismissed for failure to state a claim for relief. (ECF No. 18, at PageIDs 323 – 335). However, this Court shall address SAP America's final argument first: that the Court should dismiss the case under the doctrine of *forum non conveniens*. (ECF No. 18, at PageID 304).

Here, Lu signed an Employment Contract with "SAP (Beijing) Software System Co., Ltd." (ECF No. 18-4, at PageID 394). The Employment Contract includes a forum selection clause, which states as follows:

> In the event that a labor dispute arises from the performance of this Contract between both parties, the procedures for labor dispute shall apply. The procedures for labor dispute shall be: the labor dispute may be resolved through negotiation between both parties, or the labor dispute may be mediated by relevant mediation committee, or the parties concerned to the labor dispute may apply for arbitration to a labor and personnel dispute arbitration committee with jurisdiction. If either party disagrees with any arbitration award, it shall file lawsuits with the grassroots people's court where Party A resides.

(ECF No. 18-4, at PageID 402). Party A is listed as SAP (Beijing) Software System Co., Ltd. and Party B is listed as Lu. (ECF No. 18-4, at PageID 394).

"Where a forum selection clause points to foreign forum, the appropriate way to enforce it is through the doctrine of forum non conveniens." *Delta Alcohol Distributors v. Anheuser-Busched Intern., Inc.*, 28 F. Supp. 3d 682, 690 (E.D. Mich. 2014) (citing *Atl. Marine Constr. Co. v. U.S. Dist. Ct. for W. Dist. Of Tex.*, 571 U.S. 49, 60 (2013)).

Generally, "dismissal on forum non conveniens grounds is appropriate when the defendant establishes, first, that the claim can be heard in an available and adequate alternative forum and,

12

second, that the balance of private and public factors listed in [*Gulf Oil Corp. v. Gilbert*, 67 S.Ct. 839 (1947)] . . . reveals that trial in the chosen forum would be unnecessarily burdensome for the defendant." *Duha v. Agrium, Inc.*, 448 F.3d 867, 873 (6th Cir. 2006). However, where there is an applicable forum-selection clause, the Court must change its analysis, and the forum-selection clause should be "given controlling weight in all but the most exceptional cases." *Ingenium Tech. Corp. v. Beaver Aerospace & Defense, Inc.*, 122 F. Supp. 3d 683, 690-91 (E.D. Mich. 2015 (quoting *Atl. Marine*, 571 U.S. at 63).

> When parties agree to a forum-selection clause, they waive the right to challenge the preselected forum as inconvenient or less convenient for themselves or their witnesses, or for their pursuit of the litigation. A court accordingly must deem the private-interest factors to weigh entirely in favor of the preselected forum.

*Atl. Marine*, 571 U.S. at 64.

First, the Court must determine if the courts of Beijing, China are an adequate alternative forum. "This requirement will be satisfied if the defendant is 'amenable to process' in the foreign jurisdiction." *Wong v. PartyGaming Ltd.*, 589 F.3d 821, 830 (6th Cir. 2000) (citing *Paper Aircraft Co. v. Reyno*, 454 U.S. 235, 255 n. 22 (1981)). "A party that has consented in a forum selection clause to submit to the jurisdiction of a foreign court is amenable to process there." *Id.* at 831. Here, when Lu signed her Employment Contract, she agreed that should "a labor dispute arise[] from the performance of this Contract between both parties, the procedures for labor dispute shall apply[,]" which include bringing lawsuits in the people's court of China. (ECF No. 18-4, at PageID 402). Furthermore, Lu has already complied with this forum selection clause once by initiating legal proceedings against SAP China with the Labor Arbitration Committee of Chaoyang District, Beijing. (ECF No. 18-4, at PageID 416). The Labor Arbitration Committee issued an award and both SAP China and Lu disagreed with the award and filed lawsuits in the People's Court of

Chaoyang District, Beijing. (ECF No. 18-4, at PageID 426). Given that Lu is clearly amenable to process in the courts of Beijing, China, the Chinese courts are an available and adequate alternative forum.

Lu argues that "the absence of statutory protection in China similar to ADA or Title VII makes China a wholly inadequate forum[.]" However, an alternative forum is inadequate only if "the remedy provided by it is so clearly inadequate or unsatisfactory that is no remedy at all." *Wong*, 589 F.3d at 830-831 (citing *Piper Aircraft*, 454 U.S. at 254). SAP America argues that Lu does have similar protections under Chinese law. The Employment Promotion Law of the People's Republic of China protects Chinese workers against discrimination on the basis of ethnicity, race, or disability, and it provides workers with a right of action in the people's court in China. (ECF No. 22, at PageID 619). SAP America provided the Court with a copy of the law translated into English, and it states:

> Article 3 Workers shall be entitled by law to enjoy the right to equal employment and to seek their own employment. No worker seeking employment shall suffer discrimination on the grounds of ethnicity, race, gender or religious belief.
> . . .
> Article 29 The state shall safeguard the labor rights of disabled persons. The people's governments at all levels shall organize and coordinate the employment of disabled persons and create favorable employment conditions for such persons. No employment unit, when recruiting employees, shall discriminate against disabled persons.
> . . .
> Article 62 In the event of any employment discrimination in violation of the provision of this Law, the relevant worker(s) shall be entitled to initiate legal proceedings in the people's court.

(ECF No. 22-2, at PageID 642). Lu's preference for protection under Title VII and the ADA does not make the people's court in China an inadequate forum. "Less favorable law in the alternative forum will not, on its own, make the forum inadequate." *Wong*, 589 F. 3d at 831. "Dismissal of

14

the grounds of forum non conveniens may be granted even though the law applicable in the alternative forum is less favorable to the plaintiff's chance of recovery." *Id.*

Therefore, Lu's argument is not persuasive, and the Court finds that the courts of Beijing, China are an adequate alternative forum.

Second, the Court must balance the public interest considerations in favor of a different forum. *Id.* at 832. "The public interest factors include court congestion, local interest in the matter, . . . avoidance of conflict-of-law problems or application of foreign law and unfairness in burdening local citizens with jury duty." *Id.* As to these factors, SAP America argues:

> Plaintiff is a Chinese citizen who was employed in China by a Chinese employer under an Employment Contract governed by Chinese labor law. Consistent with these facts, Plaintiff already has legal proceedings related to her termination pending in China against her employer, SAP China. The only tenuous connection between her employment and the State of Michigan is the fact that Plaintiff (at her request) worked in Michigan part of the time during the last 15 months of her employment with her employer's permission. Thus, China has a significantly greater interest in resolving this case than the U.S. or Michigan and the case should be dismissed.

(ECF No. 18, at PageID 339). The Court agrees with SAP America and finds that the public interest factors weigh in favor of Chinese courts resolving this case.

Lu does not address any public interest factors, but only reiterates that her selection of forum should be given deference. (ECF No. 21, at PageID 563-564). However, as established above, when a district court is presented with a forum-selection clause, it "may consider arguments about public-interest factors only." *Atl. Marine*, 571 U.S. at 64. As the Supreme Court explained in *Atlantic Marine*, "[i]n all but the most unusual cases . . . 'the interest of justice' is served by holding parties to their bargain" by enforcing a forum-selection clause. *Id.* at 66; *see also Delta*, 28 F. Supp. 3d at 691.

15

Therefore, the Court **GRANTS** SAP America's motion to dismiss (ECF No. 18) and **DISMISSES** the entirety of this action on the basis of forum non conveniens.

## CONCLUSION

For the reasons explained in the above sections pertaining to each motion, the Court:

**(1) GRANTS** SAP America's motion to set aside default (ECF No. 12) and **DISMISSES** the clerk's entry of default against SAP America (ECF No. 8) because Lu failed to properly serve SAP America; and

**(2) GRANTS** SAP America's motion to dismiss (ECF No. 18) and **DISMISSES** the entirety of this action on the basis of forum non conveniens.

**IT IS SO ORDERED.**

s/Sean F. Cox
Sean F. Cox
United States District Judge

Dated:  March 3, 2022

I hereby certify that a copy of the foregoing document was served upon counsel of record on March 3, 2022, by electronic and/or ordinary mail.

s/Jennifer McCoy
Case Manager

16